TRACY L. WILKISON
Attorney for the United States,
Acting Under Authority Conferred by
28 U.S.C. § 515
CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division
MELANIE SARTORIS (California Bar No. 217560)
Assistant United States Attorney
Deputy Chief, General Crimes Section
JULIUS J. NAM (California Bar No. 288961)
Assistant United States Attorney
Deputy Chief, Riverside Branch Office
     3403 10th Street, Suite 200
     Riverside, California 92501
     Telephone: (213) 894-5615; (951) 276-6942
     Facsimile: (951) 276-6202
     E-mail:    melanie.sartoris@usdoj.gov
                julius.nam@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ED CR No. 20-58-JGB |
|---|---|
| Plaintiff, | GOVERNMENT'S POSITION REGARDING SENTENCING; EXHIBIT 1 |
| v. | **[REDACTED]**[1] |
| RAFIA SULTANA SHAREEF, | Hearing Date: December 4, 2020 |
| Defendant. | Hearing Time: 10:00 a.m.<br>Location:    Courtroom of the<br>             Hon. Jesus G.<br>             Bernal |

The United States of America, by and through its counsel of record, hereby respectfully submits its combined Position Regarding Sentencing ███████████ for defendant RAFIA SULTANA SHAREEF ("defendant").

---

[1] The government is concurrently filing (1) unredacted versions of this Position Regarding Sentencing and Exhibit 1 with a request to file both documents under seal and (2) redacted versions of the two documents publicly on the case docket.

1    ████████████████████████████████████████

2    ████████████████████████████████████████

3    ████████████████████████████████████████

4    ████████████████████████

5        The government's Position Regarding Sentencing ████████████

6    ████████ are based on the attached memorandum of points and

7    authorities, the files and records in this case, the Revised

8    Presentence Investigation Report and recommendation letter, the

9    Addendum to the Presentence Report, and any other evidence or

10    argument that the Court may wish to consider at the time of

11    sentencing.

12    Dated: November 20, 2020         Respectfully submitted,

13                                     TRACY L. WILKISON
                                       Attorney for the United States,
14                                     Acting Under Authority Conferred by
                                       28 U.S.C. § 515
15
                                       CHRISTOPHER D. GRIGG
16                                     Assistant United States Attorney
                                       Chief, National Security Division
17

18                                      /s/ Julius J. Nam
                                       ─────────────────────────────────
19                                     MELANIE SARTORIS
                                       JULIUS J. NAM
20                                     Assistant United States Attorneys

21                                     Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA

22

23

24

25

26

27

28

## <u>**TABLE OF CONTENTS**</u>

MEMORANDUM OF POINTS AND AUTHORITIES...................................1

I.    INTRODUCTION....................................................1

II.   SENTENCING CALCULATIONS AND RECOMMENDATIONS.....................2

III.  DEFENDANT'S OFFENSE CONDUCT.....................................3

IV.   THE GOVERNMENT'S RECONSTRUCTION OF THE SHREDDED DOCUMENTS......5

V.    ████████████████████████████████..............9

VI.   SENTENCING RECOMMENDATION PURSUANT TO 18 U.S.C. § 3553(a).....12

VII.  CONCLUSION....................................................16

## **TABLE OF AUTHORITIES**

<u>Cases</u>

<u>United States v. Becerril-Lopez</u>, 541 F.3d 881 (9th Cir. 2008)...... 16

<u>United States v. Booker</u>, 543 U.S. 220 (2005)........................ 15

<u>Statutes</u>

18 U.S.C. § 3553(a).......................................... passim

i

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

On December 2, 2015, Syed Rizwan Farook and Tashfeen Malik entered the Inland Regional Center ("IRC") in San Bernardino and opened fire on innocent public service professionals gathered for training and holiday celebrations.  They also shot and killed a man outside, who was on break from his job at a nearby coffee shop.  Over three horrific minutes, Farook and Malik used high-powered firearms to kill fourteen people and wound twenty-two others in what became then the most deadly terrorist attack in the United States since 9/11.  As the massacre and its grisly aftermath were unfolding, defendant Rafia Sultana Shareef was in her Redlands residence where she lived with Farook, her son, Malik, her daughter-in-law, and the infant daughter of Farook and Malik.  While first responders sprang to action to save lives at the scene of the senseless attack, and federal, state, and local law enforcement officers began an intense search for Farook and Malik and for understanding of the nature and scope of the threat they presented, defendant learned about the attack, knew it was Farook and Malik who perpetrated the attack, went to the two attackers' bedroom, grabbed a hand-drawn map that the attackers left, recognized the map as drawn by Farook and directly related to the planning of the attack, and destroyed the map by feeding it into a shredder in the room.  Defendant shredded the map intending to impede and obstruct the criminal investigation into the mass murder.

For defendant's crime of altering, mutilating, and destroying a record with the intent to obstruct a federal investigation, in violation of 18 U.S.C. § 1519, to which she pleaded guilty in March

2020, the government recommends a sentence of nine months' imprisonment and three years of supervised release.  In a different obstruction case involving another underlying crime, the government might recommend a non-custodial sentence.  This case is different. Defendant knew Farook and Malik had committed mass murder.  Defendant knew that the evidence she was destroying was directly related to the planning of mass murder.  Defendant intended to impede the anticipated investigation into mass murder.  On these facts, for this defendant, the government cannot recommend a sentence of probation. The Court should impose the government's recommended sentence of nine months' imprisonment and three years of supervised release.

**II.   SENTENCING CALCULATIONS AND RECOMMENDATIONS**

Pursuant to the Plea Agreement, defendant and the government agree – and the United States Probation Office ("USPO" or "Probation Office") concurs – that the applicable base offense level is 14 and that a two-level enhancement for destruction of an especially probative document applies.  (See Plea Agreement, Dkt. 10, ¶ 15; Revised Presentence Investigation Report ("PSR"), Dkt. 29, ¶¶ 24, 25.)  The government recommends and moves for defendant to receive a three-level adjustment for acceptance or responsibility, making the total offense level 13.  (See PSR ¶¶ 31-33.)

1    With criminal history category I (PSR ¶¶ 38-39), the resulting

2    Guidelines range is 6-12 months' imprisonment.  ████████████

3    ███████   the applicable Guidelines range is in Zone B of the

4    Sentencing Table.

5         The government recommends (1) a mid-range sentence of nine

6    months' imprisonment, (2) three years of supervised release, and

7    (3) a special assessment of $100.  (See Dkt. 25, PSR Letter (May 11,

8    2020), at 2.)[1]

9    **III. DEFENDANT'S OFFENSE CONDUCT**

10        As described in the Plea Agreement (see ¶ 13) and the PSR (see

11   ¶¶ 12-18), on December 2, 2015,[2] defendant was living at a residence

12   that she shared with Farook, Malik, and the infant daughter of Farook

13   and Malik.  (PSR ¶ 12.)  The residence was on Center Street in

14   Redlands, California (the "Center Street Residence").  (Id.)  That

15   morning, Farook and Malik left the Center Street Residence, leaving

16   their infant child with defendant.  (PSR ¶ 13.)  Farook told

17   defendant that he was taking Malik to a medical appointment, but

18   Farook and Malik went instead to the IRC in San Bernardino to commit

19   a planned terrorist attack.  (PSR ¶¶ 13-14.)

20        Farook first entered the IRC by himself and placed an improvised

21   explosive device ("IED") where his co-workers with the San Bernardino

22   _____

23        [1] The USPO recommends that defendant be sentenced to six months
     in custody followed by three years of supervised release, with terms
24   and conditions to include six months in a home detention program,
     location monitoring, and mental health treatment.  (PSR Letter at 2.)
25   The government submits, however, that its recommended sentence of
     nine months' imprisonment is appropriate.
26
          The USPO also recommends a fine of $5,500.  (PSR Letter at 1.)
27   The government defers to the Court as to the appropriateness of the
     imposition of a fine.
28
          [2] In paragraph 12 of the PSR, the USPO refers to this date as
     December 5, 2015.  (PSR ¶ 12.)  The correct date is December 2, 2015.

3

County Health Department were gathered for a training and holiday

celebration event.  (PSR ¶ 13.)  Farook then left the event.  (<u>Id.</u>)

     At 10:58 a.m., Farook and Malik returned to the IRC dressed in

black tactical gear and opened fire inside and outside the building

on Farook's co-workers and others using high-powered firearms,

killing 14 persons and wounding 22 persons within three minutes.

(PSR ¶ 14.)  Farook and Malik then fled in an SUV.  (<u>Id.</u>)  Later that

day, at or about 3:08 p.m., law enforcement officers encountered

Farook and Malik in San Bernardino near the IRC and engaged them in a

firefight that resulted in the wounding of a law enforcement officer

and the deaths of Farook and Malik.  (<u>Id.</u>)

     When the attack at the IRC occurred, defendant was at the Center

Street Residence with the infant.  Defendant was not one of the

shooters at the IRC, nor is the government alleging that defendant

had prior knowledge of the attack at the IRC.  (PSR ¶¶ 12, 18.)

     Sometime between 11:43 a.m. and 3:06 p.m., while defendant was

still at the Center Street Residence, she learned from family members

that the attack at the IRC had occurred and law enforcement had

identified Farook as a suspect.  (PSR ¶¶ 15, 22(c).)  After 3:06

p.m., two of defendant's family members arrived at the Center Street

Residence to take defendant and the infant.  (PSR ¶ 15.)  Defendant

discussed with those family members that she believed that Farook and

Malik had perpetrated the mass shooting at the IRC.  (PSR ¶¶ 15,

22(d).)

     Defendant, at one point, entered Farook's and Malik's bedroom,

grabbed at least one document that had a hand-drawn map, realized the

document had been created by Farook, recognized that the document was

directly related to Farook's and Malik's planning of the attack at

the IRC, and understood that a criminal investigation either had begun or would begin into the mass murder at the IRC.  (PSR ¶¶ 16, 17.)  Nonetheless, defendant fed the document into the shredder in the bedroom, causing it to be destroyed; her intent was to impede, obstruct, and influence the criminal investigation into Farook's and Malik's attack at the IRC.  (Id.)

Defendant and the government have stipulated that the document defendant shredded was especially probative of the attack perpetrated by Farook and Malik.  (Plea Agreement ¶ 13; PSR ¶ 16.)

After shredding Farook's hand-drawn map, defendant left the Center Street Residence with family members at about 3:41 p.m.  (PSR ¶ 15.)  Law enforcement stopped the car carrying defendant and brought defendant to the San Bernardino Police Station.  Defendant did not reveal or admit to the authorities that Farook and Malik had left a hand-drawn map or that defendant had shredded it, until she learned more than four years later that she was about to be charged in this case.

**IV.  THE GOVERNMENT'S RECONSTRUCTION OF THE SHREDDED DOCUMENTS**

After seizing the shredded material pursuant to a search warrant, the FBI took the painstaking task of reassembling the material and reconstructed portions of nineteen documents, including a two-sided handwritten plan for the December 2, 2015 attack in Farook's handwriting (the "attack plan").  (See Exhibit 1 (Reconstructed documents from shredded material).)  During defendant's interviews with the FBI in 2020, defendant confirmed the handwriting on the attack plan as Farook's but denied shredding the attack plan or any of the other documents that the FBI had reconstructed.  Instead, defendant described the document she

shredded – and pleaded guilty to destroying in this case – as a different hand-drawn map showing a road leading up to Big Bear, California.  (See PSR ¶ 22(e).)

The nineteen partially reconstructed documents consist of the (1) the attack plan; (2) a handwritten fragment of daily activities for "Sunday," "Monday," and "Tuesday"; (3) six copies of Malik's academic transcripts from 2003-2013; (4) two copies of Malik's Certificate of Domicile issued in Pakistan; (5) six fragments of Malik's photos and identification documents; and (6) three credit cards bearing Farook's name.  There are additional shredded pieces that the FBI has not been able to assemble as identifiable documents. (See Exhibit 1.)

The attack plan that the FBI was able to significantly reconstruct contains a diagram of the conference room in the IRC where the attack took place on December 2, 2015, a partial electrical wiring diagram, and a list of daily activities showing Farook's and Malik's plans for the seven days leading up to the attack.  (Exhibit 1 at 1.)  The diagram of the conference room mirrors the actual locations of entrances and exits, tables inside the room, and the physical positioning of "Managers" at a table at the head of the room.  (Id.)  The attack plan also includes a rudimentary electrical wiring diagram possibly depicting a string of lights like those used in the IED that Farook placed in the IRC before commencing the attack.[3]  (Id.)

---

[3] This IED, which may have been placed to kill and injure law enforcement and other first responders, did not detonate, and the FBI was able to safely recover it.

The attack plan further features a detailed, handwritten list of tasks to be accomplished on each day for one week, beginning with "Wednesday" and ending with "Tuesday." (Id.)  The FBI has compared the entries with evidence of Farook's and Malik's activities during the week preceding the December 2, 2015 attack and believes the list corresponds to the period beginning on Wednesday, November 25, 2015, and ending on Tuesday, December 1, 2015.  For example:

- "Transfer $5000" appears in entries for Wednesday, Friday, and Tuesday, which FBI agents have confirmed as having taken place on November 24 (Tuesday), November 27 (Friday), and December 1 (Tuesday), from Farook's bank account to defendant's bank account.

- The entry for Wednesday includes "2 cars, 3 [unintelligible]" and "10 elb, 20 caps."  FBI agents have confirmed that Farook bought on Wednesday, November 25, three remote-control cars at a retail store in Redlands. Notes written on the back of a sales receipt from a hardware store recovered from defendant's residence comprise a list of items, including "10 elb 20 caps plugs" (the word "caps" is crossed out with "plugs" written directly underneath), which appears to refer to quantities of pipe elbows and end-caps that Farook used to construct the IEDs that the FBI recovered from the garage attached to the Center Street Residence.

- The entry for Friday states "Go to Lyte [sic] creek @ 9." The entry for Sunday includes "Lytle Creek."  The entries refer to a shooting range near San Bernardino that Farook patronized.  Records from the shooting range show that Farook and Malik visited the range on Friday, November 27.

- The entry for Saturday includes "rest of materials."  Sales receipts recovered by law enforcement show that, on Saturday, November 28, Farook purchased galvanized pipe fittings, pipe plugs, and wire connectors from a hardware store in Redlands.

- The entry for Monday includes "Dest computers [unintelligible] flash drives, mother boards, cell phones." The word "dest" appears to be shorthand for "destroy." While the FBI has recovered two smashed cell phones, it has

7

never located the hard drive(s) belonging to the desktop computer recovered from Farook's and Malik's bedroom.

- The note "RDIAS" appears directly below the diagram of the IRC conference room.  "RDIAS" likely refers to the drop-in-auto-sear used to convert one of the rifles used in the attack into a machine gun.

(Exhibit 1 at 1.)

On the reverse side of the reconstructed attack plan are additional handwritten notes showing Farook's and Malik's preparation for the attack:

- Beneath the words "cover fire" and "suppressive fire" are numbered, handwritten diagrams that appear to depict Farook's and Malik's plans for maneuvering and firing upon targets.

- A two-columned chart appears approximately halfway down the right-hand side of the page.  Based on the context, this chart appears to be a packing list showing the equipment and items Farook and Malik planned to carry for the attack. Atop the chart appear the letters "Ba" and "ack," which is likely "backpack."  The left-hand column bears the letter "F" (likely for Farook) at the top and includes the entries "400 223" (given that .223 is the standard equivalent measurement for 5.56 mm rounds, this appears to refer to rounds of ammunition for one of the two assault rifles used in the attack), "food," the letters "m" and "ps" (likely "maps"), and the letters "c" and "mpass" (likely "compass").  The right-hand column bears the letter "M" (likely for Malik) at the top and includes the entries "B's," "mags," "ammo," and "400," which appear to be ammunition-related references.  Written across the bottom of both columns is the word "money."

(Exhibit 1 at 2.)

A separate daily activities list fragment for "Sunday," "Monday," and "Tuesday" appears to show Farook's and Malik's additional plans for the final three days before Wednesday, December 2, 2015.  (Exhibit 1 at 3.)  Sunday's list includes "Destroy all electronics 6-8 Am"; Monday's list includes "take out mon[e]y" and

8

"c[l]ean Room"; and Tuesday's list includes "transfer 500[0]," "Revise all tactics + [ ]actice," and "d[e]lete email accounts Mai[ ] computer."  (Id.)

    The reconstructed documents demonstrate the highly probative nature of the shredded documents and accentuate the gravity of defendant's obstructive conduct.  Law enforcement spent countless hours investigating the shooters' activities in the days leading up to the attack.  The attack plan would have greatly assisted those efforts.  By shredding Farook's hand-drawn map that defendant recognized as directly related to Farook's and Malik's planning of the attack, defendant impeded the investigation and prevented law enforcement from reaching a clearer understanding of the nature of the mass shooting that killed 14 people and wounded 22 others in the crucial early hours of the investigation.[4]

**V.**  ██████████████████████████████████████████
     ██████████████████████████████████████████████
██████████████████████████████████████████████████████

---

    [4] Because the only apparent "map" reconstructed in Farook's handwriting was the attack plan and the recovered shredded pieces do not appear to represent another hand-drawn map, law enforcement believes the attack plan is the document that defendant shredded and that she may be misremembering the nature of the document she shredded.  Due to the difficulties in reconstructing shredded documents and the possibility that not all shredded remnants were recovered by law enforcement, however, it is possible that another hand-drawn map existed, perhaps reflecting Farook's and Malik's escape plans.

    If defendant's recollection is correct, her destruction of the map was such that the FBI was unable to successfully reconstruct it.  This is aggravating as her destruction of the document permanently prevented law enforcement from evaluating the significance of the especially probative evidence, including if it provided additional significant information about the attack or the possibility that others were involved in the attack.

9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 ███████████████████████████████████████████

2 ██████████████████████████████     █████

3 █████████████████████████████████████████████

4 ████████████████████████████████

## VI.   SENTENCING RECOMMENDATION PURSUANT TO 18 U.S.C. § 3553(a)

A mid-range Guidelines sentence of nine months' imprisonment, followed by three years of supervised release, is sufficient but not greater than necessary to satisfy the goals of sentencing in 18 U.S.C. § 3553(a).

In fashioning the appropriate sentence, § 3553(a)(1) requires the Court to consider the nature and circumstances of the offense and the history and characteristics of the defendant.  By shredding Farook's hand-drawn map that was "directly related to Rizwan Farook's and Malik's planning" (PSR ¶ 25), defendant committed a staggering and enormously consequential obstruction of the federal government's investigation into the December 2, 2015 massacre.  What sets defendant's crime apart from other obstruction crimes is defendant's knowing, deliberate, and intentional concealment and destruction of the only direct evidence of the mass murderers' plan left in their room.  After learning that Farook and Malik had committed the mass shooting, defendant went to Farook's and Malik's room and, by her own account, "realized that they had emptied their closets," then "picked up a piece of paper in the room" containing a hand-drawn map.  (PSR ¶¶ 22(d), (e).)  Despite knowing that Farook and Malik had just committed mass murder at the IRC and seeing the map sitting in that cleaned-out room as a direct evidence of the planning of the mass murder, defendant proceeded to destroy that immensely probative piece of evidence.

That conduct – whatever her motive may have been – was an extremely serious offense that cannot be excused or minimized with a probationary sentence.  In another case with different facts and circumstances, defendant's protective impulses might sufficiently mitigate the seriousness of her offense such that the government might plausibly argue for a non-custodial sentence.  But not here.  Nothing can sufficiently mitigate defendant's knowing, intentional act of obstruction of an investigation into mass murder to warrant a sentence of probation.  Instead, a mid-range sentence of nine months is appropriate to address defendant's deliberate, brazen obliteration of evidence that she knew to be directly related to premeditated commission of mass murder.

A custodial sentence of nine months is further warranted in light of the enormous consequence of defendant's intentional subversion of the investigation into the massacre.  By shredding the map and preventing law enforcement from obtaining an early understanding of Farook's and Malik's intent and plans, defendant contributed to a substantial drain and waste of United States government resources at a critical time.  Had defendant not shredded the map, law enforcement would have been able to analyze it and determine its significance, and investigators might have focused their inquiries more effectively in the critical first 24-48 hours after the mass murder.  Without the telling, highly probative document that defendant destroyed and held hidden, investigators spent valuable time and resources probing, uncovering, and seeking to understand not only the terrorist attack, but also defendant's criminal conduct of obstruction.

13

Further, although interviewed by law enforcement following the massacre, defendant neither admitted nor explained her shredding of the map – until after she was named the target of this investigation four years later.  Indeed, by destroying the significant evidence that Farook and Malik left behind, defendant robbed the victims, the terror-shaken community, and the nation of direct clues as to Farook's and Malik's planning.  Defendant's crime of obstruction and interference is uniquely serious in its knowing concealment of direct evidence of mass murder and extraordinary and far-reaching consequence.  A mid-range custodial sentence of nine months is thus more than warranted.

At the same time, the government recognizes defendant's lack of a prior criminal history ███████████████████ and acceptance of responsibility in this case as mitigating factors.  When the government gave notice that defendant was a target of this investigation, she promptly acknowledged her guilt and accepted the government's plea offer without requiring the government to indict her.  Defendant has additionally admitted her guilt to the USPO and has stated that she "regrets her actions."  (PSR ¶ 22(e).) ███████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ █████████████████████████████████  The government has also considered defendant's age and apparent health conditions, which also weigh in favor of mitigation.

Thus, ██████████████████████████████ a mid-range sentencing recommendation of nine months, and not a high-end recommendation, appropriately balances the nature and circumstances of the offense and the history and characteristics of defendant.

14

The recommended sentence also serves the goals of the remaining § 3553(a) factors.  Taking into consideration the kinds of sentences available and the Guidelines range, the recommended sentence effectively reflects the seriousness of the offense, serves to promote respect for the law, adequately deters criminal conduct, and provides just punishment for defendant's criminal conduct through incarceration for a period of nine months and a supervision period of three years.  That sentence will also serve to protect the public from further crimes by defendant and deter others who seek to impede criminal investigations by destroying evidence of crimes.  Shredding documents to obstruct a federal criminal investigation is a felony offense that no one should engage in, even when the investigated crimes involve close family members.  When the destroyed evidence is for a crime so serious as mass murder and violent terrorist attack, the consequence of knowingly and intentionally obstructing investigation into that crime must be substantial.

Section 3553(a)(6) seeks to avoid disparities in sentences between any one defendant and defendants in other cases and in other districts.  As the Supreme Court has explained, the Sentencing Guidelines are carefully constructed by the U.S. Sentencing Commission, which "collect[s] information about district court sentencing decisions, undertak[es] research, and revis[es] the Guidelines accordingly" for the purpose avoiding sentencing disparities.  United States v. Booker, 543 U.S. 220, 264 (2005).  See also United States v. Becerril-Lopez, 541 F.3d 881, 895 (9th Cir. 2008) ("we have trouble imagining why a sentence within the Guidelines range would create a disparity, since it represents the sentence that most similarly situated defendants are likely to

15

receive.").  As such, the government's recommended mid-range sentence of nine months avoids creating a disparity and imposes a sentence consistent with the Sentencing Guidelines.

**VII. CONCLUSION**

The government respectfully requests that this Court impose the sentence recommended by the government of nine months' imprisonment, three years of supervised release, and a special assessment of $100.

Dated: November 20, 2020          Respectfully submitted,

TRACY L. WILKISON
Attorney for the United States,
Acting Under Authority Conferred by
28 U.S.C. § 515

CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division


 */s/ Julius J. Nam*
MELANIE SARTORIS
JULIUS J. NAM
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**CERTIFICATE OF SERVICE**

I, Stephanie Ascencio, declare:

That I am a citizen of the United States and a resident of or employed in Riverside County, California; that my business address is the Office of United States Attorney, 3403 Tenth Street, Suite 200, Riverside, California 92501; that I am over the age of 18; and that I am not a party to the above-titled action;

That I am employed by the United States Attorney for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of: **GOVERNMENT'S POSITION REGARDING SENTENCING; EXHIBIT 1 [REDACTED]**

☐ Placed in a closed envelope for collection and inter-office delivery, addressed as follows:

☐ Placed in a sealed envelope for collection and mailing via United States mail, addressed as follows:

☐ By hand delivery, addressed as follows:

☒ By email delivery, as follows: **SEE ATTACHED**

☐ By messenger, as follows:

☐ By Federal Express, as follows:

This Certificate is executed on **November 20, 2020**, in Riverside, California.  I certify under penalty of perjury that the foregoing is true and correct.

/s/ *Stephanie Ascencio*
Stephanie Ascencio
Legal Assistant

**ATTACHMENT**

Charles Swift
cswift@clcma.og

USPO Officer Elizabeth Morony
Elizabeth_Morony@cacp.uscourts.gov